IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS-EASTERN DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>Defendants. | No.<br><br>Hon.<br><br>Mag. |

# COMPLAINT

Plaintiff, by and through its undersigned counsel, hereby files this Complaint against the entities identified on Schedule A hereto (collectively, "Defendants"). In support thereof, Plaintiff states as follows:

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over this action pursuant 28 U.S.C. §§ 1331 and 1338 because the claim in this action is brought under the Copyright Act, 17 U.S.C. § 101, *et seq*.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants, since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through their operation of, or assistance in the operation of, the fully interactive, commercial Internet Stores identified herein. Specifically, each of the Defendants are directly reaching out to do business with Illinois residents by operating, or assisting in the operation of, one or more commercial, interactive e-commerce stores that sell products directly to Illinois consumers that incorporate infringing and

counterfeit versions of Plaintiff's federally registered copyright-protected designs. In short, each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## INTRODUCTION

3. Plaintiff specializes in the sale of toys, games, and childcare related products. This action has been filed by Plaintiff to combat online counterfeiters and infringers who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit and infringing products, including children's smocks, using counterfeit versions of Plaintiff's federally registered copyright-protected designs (the "Counterfeit Products"). On information and belief, Defendants create Internet Stores ("the Defendant Internet Stores") by the dozens and design them to appear to be selling genuine copies of Plaintiff's products, while actually selling Counterfeit Products to unknowing consumers.

4. The Defendant Internet Stores share unique identifiers establishing a logical relationship between them and reflecting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation, including changing the names of their stores multiple times, opening new stores, helping their friends open stores, and making subtle changes to their products.

5. Plaintiff is forced to file this action to combat Defendants' infringement of its copyright-protected designs, as well as to protect unknowing consumers from purchasing the Counterfeit Products over the Internet. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of Plaintiff's copyrights and, therefore, Plaintiff seeks injunctive

relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for the injury it is sustaining.

## THE PARTIES

**Plaintiff**

6. Plaintiff is a limited liability company organized and existing within the United States.

7. Plaintiff is the creator and seller of high-quality children arts and crafts related products, including kid-friendly art smock paint aprons ("Plaintiff's Products").

8. Plaintiff incorporates a variety of copyright-protected original works of authorship in its products, including two original visual works that have been registered with the U.S. Copyright Office (collectively, Plaintiff's "Copyrighted Designs"). The registration information for Plaintiff's Copyrighted Designs is attached hereto as **Exhibit 1**. These works have been assigned Registration Numbers by the U.S. Copyright Office as shown in **Exhibit 1**.

9. Plaintiff has generated approximately $800,000 in sales from its products that embody the Copyrighted Designs since launch in 2019 through on-line retail chains, such as Amazon, eBay®, and several other online and offline stores, as well as through Plaintiff's e-commerce website.

10. Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and publicly display Plaintiff's Copyrighted Designs.

**The Defendants**

11. Defendants are individuals and business entities who reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business or assist in business

conducted throughout the United States (including within the State of Illinois and this Judicial District) through the manufacturing, online advertising and offering for sale, and importation and distribution of products that use counterfeit and infringing versions of the Plaintiff's Copyrighted Designs. Defendants conduct business, or assist in business conducted, throughout the United States (including within the State of Illinois and this Judicial District) through the public display, online advertising and selling, and importation and distribution, of children's art smock paint aprons that incorporate counterfeit and otherwise infringing versions of Plaintiff's Copyrighted Designs. Each Defendant has targeted Illinois by selling or offering to sell, or knowingly assisting in selling or offering to sell, the Counterfeit Products to Illinois consumers through various online Amazon stores. Each Defendant has targeted Illinois by selling or offering to sell or knowingly assisting in the selling or offering to sell, Counterfeit Products to Illinois consumers via various online Amazon stores.

12. Defendants appear to be an interrelated group of counterfeiters and infringers, who create numerous Defendant Internet Stores and design these stores to appear to be selling genuine Plaintiff's Products, while they actually selling inferior imitations of Plaintiff's Products. The Defendant Internet Stores share unique identifiers, such as common design elements, such as the same or similar Counterfeit Products they offer for sale, similar Counterfeit Product descriptions, the same or substantially similar shopping cart platforms, accepted payment methods, check-out methods, lack of contact information, identically or similarly priced Counterfeit Products and volume sales discounts, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their

counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## DEFENDANTS' UNLAWFUL CONDUCT

13. Plaintiff's business success has resulted in significant counterfeiting and other infringement of Plaintiff's Copyrighted Designs. Consequently, Plaintiff maintains an anti-counterfeiting program and investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. Plaintiff has identified fully interactive e-commerce stores, including the Defendant Internet Stores, offering for sale and/or selling Counterfeit Products to consumers in this Judicial District and throughout the United States.

14. E- commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 2**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id*. Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id*. Counterfeit and pirated products account for billions of dollars in economic losses to the U.S. economy, resulting in tens of thousands of lost jobs for legitimate businesses as well as broader economic losses, including lost tax revenue.

15. Third-party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." see report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020)

attached as **Exhibit 3** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual storefronts. Exhibit 3 at p. 22. While Amazon has recently taken steps to attempt to address these shortcomings, the foregoing deficiencies largely remain.

16. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Defendant Internet Stores aliases identified Schedule A attached hereto, offering shipping to the United States, including Illinois, accepting payment in U.S. dollars and, on information and belief, having sold Counterfeit Products to residents of Illinois.

17. Defendants employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Defendant Internet Stores appear sophisticated and accept payment in U.S. dollars via credit cards, Amazon Pay, Western Union, and/or PayPal. Defendant Internet Stores often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to copy, distribute, or publicly display any of Plaintiff's Copyrighted Designs, and none of the Defendants are authorized retailers of genuine versions of Plaintiff's Products.

18. On information and belief, Defendants have engaged in fraudulent conduct when registering the Defendant Internet Stores by providing false, misleading, and/or incomplete

information to e-commerce platforms, including at least Amazon. On information and belief, certain Defendants have anonymously registered and maintained aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

19. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products on e-commerce platforms such as Amazon. Such seller alias registration patterns are one of many common tactics used by Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

20. Even though operating under multiple fictitious aliases, unauthorized on-line retailers such as the Defendant Internet Stores often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other identifying information and likewise omit other seller aliases that they use. Further, such unauthorized retailers include other notable common features on their internet stores such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, similarities in price and quantities, and/or the use of the same text and images. Further, counterfeit products offered for sale by unauthorized retailers such as the Defendant Internet Stores often bear irregularities and indicia of being counterfeit that are similar to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that these unauthorized retailers are interrelated.

21. Groups of counterfeiters such as Defendants here are typically in communication with each other. They regularly participate in QQ.com chat rooms, and also communicate through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

22. Counterfeiters such as Defendants commonly operate under multiple seller aliases and payment accounts so that they can continue operation in spite of enforcement efforts. Analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court. Here, on information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such off-shore accounts based outside of the jurisdiction of this Court. On information and belief, Defendants undertake such activity in an attempt to avoid payment of any monetary judgment awarded based on their counterfeiting and other infringement of intellectual property rights.

23. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use illicit copies of Plaintiff's Copyrighted Designs in connection with the reproduction, public display, advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States, including Illinois, over the Internet.

24. Defendants operate at least the online marketplace accounts identified in Schedule A and engage in the unauthorized reproduction, public display, and distribution of Plaintiff's Copyrighted Designs and/or designs substantially similar thereto at least through said internet stores.

25. Defendants' unauthorized reproduction, distribution, and public display of Plaintiff's Copyrighted Designs is irreparably harming Plaintiff.

## COUNT I
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 101 *et seq.*)

26. Plaintiff re-alleges and incorporates by reference herein the allegations set forth in Paragraphs 1 through 25 above.

27. Plaintiff's Copyrighted Designs constitute creative, original works of authorship, fixed in a tangible medium of expression, and protectable under U.S. copyright law. *See* 17 U.S.C. § 102.

28. Plaintiff is the owner of valid and enforceable copyrights Plaintiff's Copyrighted Designs.

29. Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for Plaintiff's Copyrighted Designs and has obtained valid copyright registrations for Plaintiff's Copyrighted Designs.

30. Defendants do not have any ownership interest in Plaintiff's Copyrighted Designs.

31. Defendants had access to the Plaintiff's Copyrighted Designs via the internet.

32. Without authorization from Plaintiff, or any right under the law, Defendants have, *inter alia*, willfully copied, reproduced, publicly displayed, and distributed, works incorporating Plaintiff's Copyrighted Designs, in connection with their operation of the Defendant Internet Stores.

33. Defendants' Counterfeit Products embody designs that are virtually identical to and/or are substantially similar to Plaintiff's Copyrighted Designs.

34. Defendants have, therefore, individually, as well as jointly and severally, infringed and continue to infringe Plaintiff's Copyrighted Designs in violation of 17 U.S.C. § 501(a). *See also* 17 U.S.C. §§ 106(1), (3), (5).

35. Defendants reap the benefits of their unauthorized reproduction, public display, and distribution, of Plaintiff's Copyrighted Designs through their receipt of substantial revenue, including substantial profit, driven by sales of their Counterfeit Products.

36. Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Counterfeit Products that capture the total concept and feel of Plaintiff's Copyrighted Designs.

37. Defendants' infringement has been willful, intentional, malicious, and purposeful, and in disregard of, and with indifference to, Plaintiff's rights.

38. Defendants, by their actions, have caused financial injury to Plaintiff in an amount to be determined at trial.

39. Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiff irreparable injury that cannot fully be compensated for or measured monetarily. Plaintiff has no adequate remedy at law for such injury.

40. In light of the foregoing, and as contemplated by 17 U.S.C. § 502, Plaintiff seeks temporary, preliminary, and permanent injunctive relief prohibiting further infringement of Plaintiff's copyrights by Defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants and entry of an Order directing as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from reproducing, publicly displaying, and distributing Plaintiff's Copyrighted Designs and all colorable imitations thereof,

10

and from preparing derivative works based upon Plaintiff's Copyrighted Designs, and in assisting third-parties in such activity, pursuant to 17 U.S.C. § 502;

2) That Defendants destroy all copies of Plaintiff's Copyrighted Designs and all colorable imitations thereof, as well as all works derivative thereof, made by, or made under the control of, Defendants;

3) That Plaintiff be awarded statutory damages based on Defendants' willful copyright infringement, pursuant to 17 U.S.C. § 504(c)(2), in an amount of $150,000 per infringed work;

4) That Plaintiff be awarded its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505;

5) Alternatively, should the Court not award Plaintiff statutory damages, that Defendants pay to Plaintiff all actual damages sustained by Plaintiff as a result of Defendants' infringement, said amount to be determined at trial; and that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringement of Plaintiff's Copyrighted Designs as complained of herein, to the extent not already accounted for in the above-referenced assessment of actual damages;

6) That Plaintiff be awarded any and all other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues triable as of right to a jury. Fed. R. Civ. P. 38(b).

Date: November 23, 2020            Respectfully submitted,

/s/DALIAH SAPER
DALIAH SAPER (ARDC NO. 6283932)
BRANDON BEYMER (ARDC NO. 6332454)
SAPER LAW OFFICES, LLC

           505 N. LASALLE, SUITE 60654
           CHICAGO, ILLINOIS 60654
           (312) 527-4100

           ATTORNEYS FOR PLAINTIFF