**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS-EASTERN DIVISION**

| | |
|---|---|
| JOHN DOE,<br><br>        Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A",<br><br>        Defendants. | No. 1:20-cv-6955<br><br>Hon. Steven C. Seeger<br><br>Mag. Jeffrey Cole |

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE TERMS OF THE TEMPORARY RESTRAINING ORDER AND**
**OF DENIAL OF PLAINTIFF'S MOTION TO PROCEED ANONYMOUSLY**

Plaintiff, by and through its undersigned counsel, hereby moves for reconsideration of the Court's denial-in-part of its *Ex Parte* Motion for Temporary Restraining Order ("TRO") (Dkt. 6-8). (Ex. 1, Sealed TRO).[1] Plaintiff further moves to decrease the bond amount required in the TRO from $250,000 to $10,000. (*See* Ex. 1 at §5). Plaintiff also moves for reconsideration of the Court's Order denying Plaintiff leave to proceed anonymously in this action. (Dkt. 20).[2]

---

[1] While, on its face, the Court's December 16, 2020, Minute Entry indicates that Plaintiff's TRO Motion was granted, Plaintiff's Motion is treated herein as being granted-in-part and denied-in-part because of the significant changes between the TRO as entered as compared to the TRO sought by Plaintiff.

[2] On December 17, 2020, Plaintiff moved for reconsideration of the Court's Order denying Plaintiff leave to proceed anonymously. (Dkt. 22). Plaintiff will be withdrawing that Motion because it was based on an inaccurate understanding of the terms of the TRO that was entered. Plaintiff addresses such matters anew herein.

## INTRODUCTION

1. It is critical that Defendants and nefarious third-parties that assist infringers/counterfeiters, such as Defendants, are not made aware of this action prior to the accounts containing their ill-gotten funds have been restrained. Otherwise, Defendants will be able to liquidate their payment accounts prior to any judgment being entered and collection activity beginning. This veritable inevitability is also why Plaintiff moved for a TRO *ex parte* without notice to Defendants and why all filings identifying Defendants by name were filed under seal. This is also why Plaintiff filed this action against Defendants as "John Doe." All of these efforts undertaken by Plaintiff were designed to allow for freezing of Defendants' payment accounts while this action is litigated.

## BACKGROUND

2. Plaintiff initiated this action anonymously as "John Doe" on November 23, 2020. (Dkt. 1).

3. On November 23, 2020, Plaintiff moved, *ex parte*, for entry of a Sealed TRO. (Dkt. 6-8.)

4. Plaintiff's proposed TRO (Ex. 2) included*, inter alia*, provisions restraining each of the six Defendant's PayPal and other financial accounts housing revenue received as a result of the intellectual property infringement complained of in Plaintiff's Complaint in this action. (Ex. 2 at §3.)

5. Plaintiff's TRO Motion was filed *ex parte* and under seal in order to minimize the risk that Defendants would learn of this action prior to Defendants' payment accounts having been restrained.

6. On December 16, 2020, the Court granted-in-part and denied-in-part Plaintiff's Motion for TRO. The TRO entered by the Court did not include the provisions referenced above, set forth in Section 3 of Plaintiff's proposed TRO, restraining the payment accounts containing the ill-gotten funds. (*Compare* Ex. 1 with Ex. 2).[3] The TRO also requires Plaintiff to post a $250,000 bond.

7. In the same December 16, 2020, Order, the Court denied Plaintiff's request for leave to proceed anonymously. (Dkt. 20).

## ARGUMENT

**I. The Court's December 16, 2020, TRO, Should Be Modified to Require the Restraining of Defendants' Payment Accounts Holding the Illicit Funds at Issue and to Decrease the Bond Amount.**

**A. To Avoid Defendants Transferring their Illicit Funds to New, Unknown, Accounts, It is Imperative that the Court Order that Defendants' Payment Accounts Be Restrained Prior to Defendants Receiving Notice of this Action**.

8. The Federal Rules of Civil Procedure do not specifically provide for motions to "reconsider" and courts analyze such motions differently depending upon whether the motion concerns an interlocutory order or a final judgment. Here, the December 16, 2020, TRO entered by the Court, and the Court's associated December 16, 2020, Order denying-in-part Plaintiff's Motion for TRO, constitute interlocutory orders. *Hyatt v. Marchant*, 777 F. App'x 819, 821 (7th Cir. 2019). The portion of the Court's December 16, 2020, Order denying Plaintiff's Motion for Leave to Proceed Anonymously likewise constitutes an interlocutory order.

---

[3] The TRO entered by the Court was modified relative to the proposed TRO submitted by Plaintiff in other ways as well but Plaintiff does not seek reconsideration with respect to those other changes.

3

9. Courts have inherent authority under Federal Rule of Civil Procedure 54(b) to reconsider interlocutory orders "at any time before entering a final judgment." *Wiegel v. Stork Craft Mfg., Inc.*, 891 F. Supp. 2d 941, 944 (N.D. Ill. 2012). Thus, the Court has discretionary authority to reconsider the terms of the TRO entered in this case (and the associated Order/Minute Entry, Dkt. 20). *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012).

10. Defendants operating from overseas, in intellectual property infringement cases such as this, undertake extensive efforts to shield assets and otherwise evade the Court's enforcement powers. Such accused infringers/counterfeiters, upon becoming aware of legal proceedings initiated against them, routinely transfer assets to accounts unknown to others and migrate their infringing product listings to new websites and e-commerce accounts and platforms.

11. Further, third-parties such as "Sellerdefense" (sellerdefense.cn), a Chinese organization that monitors intellectual property enforcement lawsuits, actively assists infringers/counterfeiters to avoid enforcement efforts. They do so by, *inter alia*, identifying infringement/counterfeiting lawsuits on their website, and encouraging the accused infringers/counterfeiters to liquidate their pertinent payment accounts and change payment processing vendors for the accounts. They also assist infringers/counterfeiters in the hiring of counsel and by providing advice regarding settlement strategies.

12. In order to minimize the risk that Defendants are made aware of this action and given an opportunity to liquidate their payment accounts, Plaintiff seeks to have such accounts restrained without notice to Defendants.

13. Recognizing this risk inhering in accused infringers/counterfeiters becoming aware of litigation pending against them, this Court routinely orders, without notice to the defendants, that such entities' payment accounts be restrained during the pendency of the action. *See, e.g.,*

4

*Chrome Hearts LLC v. The Partnerships and Unincorporated Assocs. Identified on Sch. "A,"* 15 C 3491, 2015 WL 5307609, at *1 (N.D. Ill. Sep. 9, 2015); *Bulgari S.p.A. v. The Partnerships and Unincorporated Assocs. Identified on Sch. "A,"* No. 14 C 4819, 2014 WL 3765854, at *5 (N.D. Ill. Jul 29, 2014); *Volkswagen AG v. iman365-USA*, No. 18-cv-6611, 2020 WL 977969, at *2 (N.D. Ill. Feb. 28, 2020); *Oakley, Inc. v. The Partnerships and Unincorporated Assocs. Identified on Sch. "A,"* Case No. 14-cv-7714, 2014 WL 12573678, at *3 (N.D. Ill. Oct. 30, 2014); *Michael Kors, L.L.C. v. Wang*, Case No. 15-cv-124, 2015 WL 12683830, at *4 (N.D. Ill. Feb. 18, 2015); *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 900 (N.D. Ill. 2015). The foregoing cases constitute merely a sampling of such cases.

14. Plaintiff respectfully submits that there are no circumstances present here justifying departure from the regular practice of this Court to restrain accused infringers/counterfeiters payment accounts during the pendency of this action and to do so in advance of Defendants having been provided notice of the action. To the contrary, the considerations discussed above, specifically the risk that Defendants will liquidate the accounts, strongly supports restraining the accounts holding the illicit funds consistent with the above-referenced precedent.

      **B.**  **The Bond Amount Should Be Decreased from $250,000 to $10,000.**

15. "The purpose of an injunction bond is to compensate the defendant, in the event he prevails on the merits, for the harm that an injunction entered before the final decision caused him." *Ty, Inc. v. Publics. Intern. Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002).

16. Courts have significant discretion in determining an appropriate bond amount when ordering injunctive relief. Fed.R.Civ.P. 65(c); *Gateway E. Ry. Co. v. Terminal R.R. Assoc. of St. Louis*, 35 F.3d 1134, 1141 (7th Cir. 1994).

5

17. A party may move to change the amount of the bond as set by the court so long as the injunctive relief remains in effect. *Monster Energy*, 136 F. Supp. 3d at 911.

18. Here, the Court has ordered that Plaintiff post a $250,000 bond as security in the event that it is later determined that one or more Defendants should not have been restrained. (Ex. 1 at §5).

19. In infringement/counterfeiting cases similar to this action, where this Court has required a bond in connection with a TRO and/or preliminary injunction, that bond is typically set at $10,000. *See, e.g., Monster Energy Co.*, 136 F. Supp. 3d at 910-11 (setting the bond amount at $10,000 in trademark infringement/counterfeiting case and observing that this amount is consistent with what this Court has previously ordered in similar cases; and citing the following cases where this Court set $10,000 as the bond: *Burberry Limited, et al. v. Su Sheng, et al.,* No. 1:15-cv-02851 (N.D. Ill. May 27, 2015); *Beats Electronics, LLC v. The Partnerships and Unincorporated Assocs. Identified on Sch. "A,"* No. 1:14-cv-05209 (N.D. Ill. Oct. 7, 2014); *Calvin Klein Trademark Trust, et al. v. The Partnerships and Unincorporated Assocs. Identified on Sch. "A,"* No. 1:13-cv-08186 (N.D. Ill. Jan. 14, 2014); *True Religion Apparel, Inc. v. Does 1–100,* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012); *Tory Burch LLC v. Zhong Feng, et al.,* No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012); *Deckers Outdoor Corp. v. Does 1–1,281,* No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012)); *see also Oakley, Inc. v. The Partnerships and Unincorporated Assocs. Identified on Sch. "A,"* Case No. 14-cv-7714, 2014 WL 12573678, at *4 (N.D. Ill. Oct. 30, 2014); *Am. Bridal and Prom Indus. Assoc., Inc. v. The Partnerships and Unincorporated Assocs. Identified on Sch. "A,"* 192 F. Supp. 3d 924, 928 (N.D. Ill. 2016); *Michael Kors, L.L.C. v. Wang*, Case No. 15-cv-124, 2015 WL 12683830, at *4 (N.D. Ill. Feb. 18, 2015).

20. Plaintiff submits that there are no special circumstances in this action warranting departure from the typical bond amount of $10,000.

21. The TRO entered by the Court states that this large, $250,000 bond, is based on the large number of Defendants. Plaintiff respectfully suggests that, relative to other similar cases (i.e., involving allegations of intellectual property infringement/counterfeiting against largely overseas entities operating through webs of e-commerce accounts and aliases), six is not a high number of defendants. For example, in *Monster Energy*, the Schedule "A" identified 500 defendants, 332 defendant on-line marketplace accounts, and 203 defendant domain names. (*See* Ex. 3). In *Michael Koors*, the Schedule "A" identified 408 defendant domain name registrants, 173 defendant on-line marketplace accounts, and 522 defendant domain names. (*See* Ex. 4). In *Oakley*, the Schedule "A" identified 562 defendant domain name registrants, 982 defendant domain names, and 116 on-line marketplace accounts, as well as 104 associated PayPal accounts and 91 associated email addresses. (*See* Ex. 5). This list could go on. This sampling well reflects though that six defendants is not a high number of defendants for this sort of action.

22. Further, it is quite possible that a single entity owns and derives gain from each of the six Defendant accounts identified on Plaintiff's Schedule "A" in this case. This is often the case in actions such as this involving multiple infringing on-line storefronts operated by overseas entities.

**II. Plaintiff Should Be Permitted to Proceed Anonymously Until Defendants' Payment Accounts Are Restrained or Until January 19, 2021, Whichever is Earlier.**

23. The considerations discussed above supporting restraining Defendants' payment accounts likewise support permitting Plaintiff to proceed anonymously until the accounts are

7

restrained; or at least until January 19, 2021, so as to provide ample opportunity for Plaintiff to attempt to secure such restraints.

24. If Plaintiff's identity is disclosed, Defendants as well as "Sellerdefense" and other like-minded third-parties intent on tipping Defendants off to the pendency of this action, will likely become aware of this action. This is because such entities employ well-developed techniques to identify immediately when an action targeting such infringers/counterfeiters has been filed. Such defendants then routinely liquidate all of their payment accounts that may be at risk of being restrained, change the domain names they operate under, migrate to new on-line marketplaces, and otherwise take steps to avoid being held accountable for their unlawful activity.

25. Defendants are certainly aware of the businesses whose intellectual property they are infringing. Disclosure of Plaintiff's identity will, therefore, signal to Defendants that a lawsuit has likely been filed against them and they will respond in the manner discussed.

26. Accordingly, Plaintiff urges that it is critical here that it be permitted to proceed anonymously until Defendants' payment accounts have been restrained (or until January 19, 2021, whichever is earlier).

## CONCLUSION

27. For the reasons set forth above, Plaintiff submits that the TRO entered by the Court (Ex. 1) should be supplemented with Section 3 of the proposed TRO submitted by Plaintiff (Ex. 2 §3). Plaintiff further urges that it should be permitted to proceed anonymously until Defendants' payment accounts are restrained or at least until January 19, 2021, whichever is earlier. Plaintiff further urges that the required bond should be decreased from $250,000 to $10,000.

Date: December 18, 2020                  Respectfully submitted,

/s/ DALIAH SAPER
DALIAH SAPER (NO. 6283932)

                                                                                                                                                BRANDON BEYMER (NO. 6332454)
THEODORE J. CHIACCHIO (NO. 6332547)
SAPER LAW OFFICES, LLC
505 N. LASALLE, SUITE 60654
CHICAGO, ILLINOIS 60654
(312) 527-4100
DS@SAPERLAW.COM
BRANDON@SAPERLAW.COM

**ATTORNEYS FOR THE PLAINTIFF**